IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OSCAR MORALES,

          Petitioner,             No. 2: 12-cv-0544 LKK KJN P

    vs.

ANTHONY HEDGPETH, et al.,

          Respondents.        FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

      Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is respondent's motion to dismiss on grounds that this action is barred by the statute of limitations.  For the following reasons, the undersigned recommends that respondent's motion be granted.

         At the outset, the undersigned addresses respondent's request to file an untimely reply.  Good cause appearing, this request is granted and respondent's reply is deemed timely.

II.  Background

         On February 23, 2012, petitioner filed his original federal petition raising one claim: the trial court erred by excluding defense evidence of third party culpability.  On May 7, 2012, respondent filed a motion to dismiss the original petition as barred by the statute of

1

1    limitations.  In response to the motion to dismiss, on August 22, 2012, petitioner filed an

2    amended petition raising the claim raised in the original petition as well as three new claims:  an

3    alleged Brady[1] violation and ineffective assistance of trial and appellate counsel.

4                    On October 31, 2012, the undersigned vacated the motion to dismiss addressing

5    the original petition and directed respondent to file a response to the amended petition.  On

6    November 30, 2012, respondent filed the pending motion.

7    III.  Legal Standard for Statute of Limitations

8                    On April 24, 1996, the Antiterrorism and Effective Death Penalty Act

9    ("AEDPA") was enacted.  Section 2244(d)(1) of Title 8 of the United States Code provides:

10              A 1-year period of limitation shall apply to an application for a writ
                of habeas corpus by a person in custody pursuant to the judgment
11              of a State court.  The limitation period shall run from the latest of –

12              (A) the date on which the judgment became final by the conclusion
                of direct review or the expiration of the time for seeking such
13              review;

14              (B) the date on which the impediment to filing an application
                created by State action in violation of the Constitution or laws of
15              the United States is removed, if the applicant was prevented from
                filing by such State action;
16
                (C) the date on which the constitutional right asserted was initially
17              recognized by the Supreme Court, if the right has been newly
                recognized by the Supreme Court and made retroactively
18              applicable to cases on collateral review; or

19              (D) the date on which the factual predicate of the claim or claims
                presented could have been discovered through the exercise of due
20              diligence.

21   28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) provides that "the time during which a properly filed

22   application for State post-conviction or other collateral review with respect to the pertinent

23   judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C.

24   § 2244(d)(2).

25   _____

26              [1] Brady v. Maryland, 373 U.S. 83 (1963).

IV.  Discussion re: Statute of Limitations

      A.  Timeliness of Petition

         The undersigned herein first considers whether the original petition is timely.  If the original petition is not timely, then all claims are barred by the statute of limitations.

         Petitioner was convicted of assault with a deadly weapon.  (Respondent's Lodged Document 1.)  On February 6, 2009, petitioner was sentenced to 3 years in prison.  (Id.)  On November 23, 2000, the California Supreme Court denied petitioner's petition for review.  (Respondent's Lodged Document 4.)  Petitioner's conviction became final ninety days thereafter, on February 21, 2011, when the time for him to file a petition for certiorari with the United States Supreme Court expired.  See Bowen v. Roe, 188 F3d 1157, 1158–59 (9th Cir. 2001). The one-year limitations period for his seeking of federal habeas relief started the next day, February 22, 2011, and, absent any tolling, expired on February 21, 2012.  See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).

         In order to determine whether this action was timely filed, the undersigned considers application of the "mailbox rule."  In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the actual date of its receipt by the court clerk.  Houston v. Lack, 487 U.S. 266, 276 (1988).  The Ninth Circuit has applied the "mailbox rule" to state and federal petitions.  See Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001).

         Petitioner's original petition was originally filed in the United States District Court for the Northern District of California.  (ECF No. 1.)  The petition was file stamped by the court on February 23, 2012.  (Id.)  The petition contains no proof of service indicating the method by which the petition was sent to the Northern District.  However, petitioner signed the petition on  February 23, 2012.  (Id. at 7.)  The date the petition is signed may be considered the earliest possible date an inmate could submit his petition to prison authorities for filing under the

1   mailbox rule.  Jenkins v. Johnson, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003), overruled on other

2   grounds, Pace v. DiGuglielmo, 544 U.S. 408 (2005).

3           In his opposition to the pending motion, petitioner does not dispute respondent's

4   assertion that he signed and filed his petition on February 23, 2012.[2]  Accordingly, the

5   undersigned finds that petitioner filed his petition on the date it was signed, which is also the date

6   it was actually filed in court.  Unless petitioner is entitled to statutory or equitable tolling, the

7   instant action is not timely because it was filed two days after the statute of limitations ran.

8           B.  Statutory Tolling

9           Turning to statutory tolling, petitioner filed one state habeas corpus petition

10   addressing his assault conviction.  This petition was filed in the California Supreme Court on

11   May 20, 2012.  (ECF No. 20-1.)  Because this petition was filed after the limitations period had

12   run, this petition does not qualify for statutory tolling.  See Ferguson v. Palmateer, 321 F.3d 820,

13   823 (9th Cir. 2003) (petitioner filed after the period of limitations expired did not serve to restart

14   the statute of limitations).

15           C.  Equitable Tolling

16           In his opposition to the pending motion, petitioner argues that he is entitled to

17   equitable tolling.  The limitations period is subject to equitable tolling if the petitioner

18   demonstrates:  "(1) that he has been pursuing his rights diligently, and (2) that some

19   extraordinary circumstance stood in his way."  Holland v. Florida, 130 S. Ct. 2549, 2560–62

20   (2010).  Petitioner bears the burden of alleging facts that would give rise to tolling.  Pace v.

21   DiGuglielmo, 544 U.S. 408, 418 (2005).

22           Petitioner alleges that he could not file a timely petition because he lacked access

23   to his legal files due to being transferred to California State Prison-Corcoran ("Corcoran").

24

25        [2]  Because petitioner was housed at Salinas Valley State Prison at the time he filed the
original petition, which is located in the Northern District, it is possible that someone filed the

26   petition in the Northern District on petitioner's behalf on the same date that he signed it.

1    Petitioner alleges that once he arrived at Corcoran, he was placed on a protective custody yard

2    and subject to continuous lockdowns.  Petitioner alleges that his new yard was like being housed

3    in administrative segregation.  Petitioner alleges that he did not obtain his files until February 23,

4    2012.

5            In the reply to the opposition, respondent states that he verified petitioner's claim

6    that he was transferred during the last month in which he had to timely file a federal petition.

7    Respondent states that it is therefore credible that petitioner was without access to his legal files

8    as a result of the transfer and institutional lockdowns until February 23, 2012.  Respondent has

9    provided records demonstrating that petitioner was transferred from Salinas Valley State Prison

10   to Corcoran on February 14, 2012.  (Respondent's Lodged Document 7.)  Petitioner's property

11   was received at Corcoran the same day.  (Id.)  Therefore, petitioner was allegedly without access

12   to his legal property for approximately ten days, eight of which were during the limitations

13   period.

14           As noted by respondent, petitioner had 357 unimpeded days prior to his transfer to

15   Corcoran in which to file his federal habeas petition.  Petitioner's original federal petition

16   contains one claim that was raised on direct appeal.  The petition itself includes the habeas form,

17   identifying this claim, as well as pages from petitioner's direct appeal containing the argument in

18   support of this claim.  In other words, the preparation of the original federal petition was not

19   particularly complicated.

20           Because petitioner was denied access to his legal property for the final eight days

21   of the limitations period, the undersigned does not find that he acted diligently in pursuing his

22   legal rights.  Petitioner does not explain why he could not have filed a timely federal petition in

23   the 357 days prior to his transfer to Corcoran, during which time he had access to his legal

24   property.  Petitioner also does not address the issue of whether he had notice of the transfer and,

25   if so, why he did not prepare his federal petition prior to his transfer.  For these reasons, the

26   undersigned finds that petitioner has not met his burden of demonstrating that he acted diligently

1   in pursuing his rights or that his transfer to Corcoran constituted an extraordinary circumstance

2   that actually prevented him from filing a timely federal habeas petition.  See Spencer v. Sutton,

3   239 F.3d 626, 630 (4th Cir. 2001) (equitable tolling denied where delay in pursuit of federal

4   habeas attributable to petitioner's actions in waiting for the day prior to expiration period);

5   Melancon v. Kaylo, 259 F.3d 401, 408 (5th Cir. 2001) (state trial court's mis-advisement of

6   appeal date did not equitably toll period where petitioner waited more than four months to file

7   federal petition); Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (denying equitable

8   tolling where "the petitioner, acting with reasonable diligence, could have filed on time

9   notwithstanding the extraordinary circumstances."); Plowden v. Romine, 78 F.Supp.2d 115, 119

10  (E.D.N.Y. 1999) (denying equitable tolling where petitioner allowed a two week window, in

11  which he could have filed a timely habeas petition, to lapse).

12         Petitioner also argues that he is entitled to equitable tolling because he was

13  convicted as a fifteen year old juvenile and "shows mental incompetence in not fully

14  comprehending the legal hurdles he faces and requires some type of legal assistance."

15         Petitioner's claim regarding his "mental incompetence" is vague.  The

16  determination of whether to apply the equitable tolling doctrine is highly fact specific, and

17  petitioner bears the burden of alleging facts that would give rise to tolling.  Pace v. DiGuglielmo,

18  544 U.S. 408, 418 (2005).  If petitioner is claiming that he was or is mentally incompetent, he has

19  not met his burden of showing that equitable tolling is appropriate on this ground.

20         It appears that petitioner is really arguing that his lack of education contributed to his

21  inability to file a timely federal petition.  A pro se prisoner's lack of legal sophistication is not an

22  extraordinary circumstance warranting equitable tolling.  Rasberry v. Garcia, 448 F.3d 1150, 1154

23  (9th Cir. 2006); Jimenez v. Hartley, 2010 WL 5598521 at *5 (C.D.Cal. Dec. 6, 2010), adopted 2011

24  WL 164536 (C.D. Cal. Jan. 13, 2011) (allegations that petitioner was uneducated, illiterate and

25  indigent insufficient).  Accordingly, petitioner is not entitled to equitable tolling on this ground.

26  ////

D. <u>Conclusion</u>

For the reasons discussed above, the undersigned finds that the original petition is barred by the statute of limitations.

IV. <u>Actual Innocence</u>

In his opposition, petitioner argues that even if his petition is time barred, it may still be considered because he is raising a claim of actual innocence. Petitioner argues that his claim alleging third party culpability demonstrates his actual innocence.

On May 28, 2013, the Supreme Court held that a federal court may entertain an untimely claim of actual innocence. <u>McQuiggin v. Perkins</u>, 2013 WL 2300806 (May 28, 2013). To proceed on an untimely claim of actual innocence, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" <u>Id.</u> at *11 (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). "[T]he emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial." <u>Schlup</u>, 513 U.S. at 327. "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" <u>McQuiggin</u>, at *12 (quoting <u>Schlup</u>, 513 U.S. at 316.) "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." <u>Id.</u> at 11.

In order to evaluate this claim of actual innocence, the undersigned will set forth herein the analysis of petitioner's third party culpability claim as analyzed by the California Court of Appeal on direct appeal:

BACKGROUND

The People's case was straightforward: The victim had had a long-running feud with the Morales family, and eventually defendant, a younger son in that family, shot the victim. The defense theory was that the victim was drunk and could not identify the person who shot him, but used the occasion of being shot to blame defendant, as part of that family feud. The only evidence that defendant was the shooter came from the

victim's statements and testimony, although the victim's daughter made a statement corroborating defendant's presence on the occasion of the shooting.

The victim testified he knew defendant, in part because defendant's older brother Steven had had an affair with the victim's ex-wife, which caused the victim and his ex-wife to divorce. This affair had made the victim angry, and after the victim made criminal threats against his wife, which he claimed were unrelated to the affair, she obtained a restraining order, and their children went to live with the Morales family for several months.

After the victim and his ex-wife reconciled for a time, Steven Morales ran them off the road with his car, with the aid of his brother, Johnnie Morales, as a result of which Steven Morales was sent to prison. The victim's stepdaughter had had children with Hector Morales, another brother of defendant, and the victim disapproved of this relationship. The victim testified that about four or five years prior, he got into a fistfight with several members of the Morales family, but not with defendant, and that Steven Morales "shot at me that day twice." The victim testified he was "still feuding to this day" with the Morales family.

On the evening of January 25, 2006, the victim was on his porch, drinking with friends, when defendant, a "Hispanic," arrived with a group of about six or seven Black male teenagers. After words were exchanged and the victim threatened to sic his dog on them, the group left. However, defendant threatened to come back in 20 minutes and shoot the victim. The victim called his ex-wife and told her defendant had threatened to shoot him and said, "If anything happens to me, make sure my family gets justice." Later, defendant returned and called out to the victim. The victim saw defendant had his hands through the fence, holding something. The victim turned away, and was shot in the back.

The victim testified that in the exchange of words he had with defendant prior to the shooting, he referred to defendant's brother Steven as defendant's "sister." He also testified that when he first saw the group of teenagers, with one Hispanic standing alone, he called out that he knew "that's not Morales," but he did not mean he knew it was not defendant, he meant if that person was a Morales family member, there would "be some problems right there[.]"

The victim told the first officer on the scene that defendant was the shooter, and the next day the victim identified defendant from a photographic lineup. The victim described defendant to the officer as a "male Hispanic, 14 to 15 years old, 120 pounds, wearing all black clothing." The victim also gave this officer a fuller statement at the hospital, identifying defendant as the shooter and stating that defendant, in the company of about five male Black juveniles, had threatened to shoot him about 20 minutes earlier.

The victim testified he had had about two 40-ounce malt liquors that evening, starting about 7:00 p.m. and ending when he was shot about two hours later, but he later conceded, "It's been so long. Might have been the fourth one, might have been the fifth one. I don't know. I wasn't counting them." A doctor noted in the hospital records that the victim was intoxicated.

The victim had seen one of the Black "kids" before: That youth had been bothering

8

Robert, one of the victim's drinking companions, and was a "troublemaker in the neighborhood." On Thanksgiving 2006, after the shooting, the victim was visiting Robert, when defendant's brother Johnnie and his family pelted the victim's car with beer bottles and "[t]hey was kicking the doors, trying to pull us out, scratching, screaming, hollering, all kind of stuff."

The victim's daughter testified she saw her father arguing with a group of teenagers consisting of Blacks and one "Mexican." She heard one teenager say, "[W]e're coming back with a nine millimeter." She had not identified any of the teenagers as defendant, whom she knew, but her father told her defendant was the one who threatened him. In part, her 911 call transcript reads "my dad was arguing with some black guys. And they said that they were gonna bring a .9mm and come and shoot him." She testified she said this because most members of the group were Black. A peace officer testified that on the night of the shooting, the victim's daughter identified defendant as the lone Hispanic in the group.

Defendant did not testify at trial.

DISCUSSION

During the victim's direct testimony, but outside the presence of the jury, the defense expressed a wish to introduce evidence of a 911 call that purportedly indicated the shooter was Black, to show that the responding peace officers "did nothing to try and follow-up" on that information. Apparently, defense counsel had represented in her opening statement that a witness to the shooting identified the shooter as a Black male, and the prosecutor had objected on hearsay grounds. Later in the trial, the People objected to any evidence that an unknown witness had identified a Black shooter. Specifically, the prosecutor interposed a hearsay objection to the following question defense counsel asked a peace officer: "Now, the information that was provided, did that include a person giving you a description of a black male person as being responsible for the shooting?" Outside the presence of the jury, defense counsel represented that the 911 caller gave the officer a "detailed description about where the person shot from, the person was a male black, 20 to 21, and he shot from the fence line."

The recording and transcript of the 911 call indicate the caller was talking to someone at the scene-apparently a peace officer-at the same time as he was relaying information to the dispatcher. The caller is calm and unhurried in his responses, and states the shooter was a Black male, aged 21 to 22, and that he "shot from the fence line." The caller never states that he personally saw the shooting. After the recording was played in court, and the officer could not authenticate his purported voice in the recording, the trial court sustained the prosecutor's objection.FN1

FN1. Appellate counsel infers the 911 caller was one of the victim's friends. But defense counsel did not establish this purported fact in the trial court, nor did she call that friend as a witness.

Later, the parties discussed a dispatch or "CAD" log entry, that translates as: "Per witness, suspect[s], five to six ... male blacks ..., possible adults on foot, last seen eastbound from scene." FN2 The prosecutor interposed a successful hearsay objection. The trial court also stated, "I've indicated to you both, absent other, if you

will, competent evidence that would support who said it or the reliability of that statement, I was excluding it primarily on the basis of 352 because I thought this would be far more prejudicial than probative with respect to what was being elicited."

FN2. The original "CAD" text reads: "PER WITN..SUSP 5-6 MB POSS ADULTS, ON FOOT LS EB FROM SCENE[.]"

The following Monday, before testimony resumed, defense counsel moved to enter the 911 call as a "business record" and use it to show that "law enforcement, for all the jury has heard, has done nothing to further investigate this crime beyond hearing the name of [defendant]." She wanted to introduce the "CAD" entry on the same grounds. She also asserted the caller's statement was admissible as an excited utterance. The prosecution had filed a written opposition to the use of either item of evidence for the truth of the matter asserted, but did not dispute that the two documents were certified records. The trial court excluded both items of evidence.

On appeal, defendant contends the 911 call and the CAD log were admissible "under the business records and excited utterance exceptions to the hearsay rule." He separately contends that because they tended to inculpate a third party, they were admissible. We disagree.

As for the claim that the evidence was admissible to show a Black man shot the victim, it was inadmissible hearsay. A similar claim was rejected in a civil tort case, where the plaintiff attempted to rely on the content of 911 calls to show prior criminal incidents at a business:

"The analytical flaw in plaintiffs' contention that the trial court erred in disallowing the records is its failure to recognize and address the fact that the records were multiple hearsay. That is, the records were offered to prove two points. The first is that the 911 calls were placed to the LAPD. The second is that a particular action or crime was taking place at the restaurant as reflected in the statements made to the 911 operator by the individual(s) who placed the phone calls. When multiple hearsay is offered, an exception for each level of hearsay must be found in order for the evidence to be admissible. (Evid.Code, § 1201.)

"In this case, [the LAPD custodian of records'] testimony that the public employees who took and recorded the calls were obligated to record the information in an accurate manner laid the foundation for the admission of the records as official records to establish that the 911 calls were placed to the LAPD. However, that testimony did not and could not lay a sufficient foundation to permit the records to be offered for the truth of the matter asserted in the calls by the individuals who telephoned the LAPD because those individuals were not under a duty to accurately report information. [Citation.]" (Alvarez v. Jacmar Pacific Pizza Corp. (2002) 100 Cal.App.4th 1190, 1204-1205, original italics, fn. omitted.)

The same rule applies in criminal cases. (See People v. Ayers (2005) 125 Cal.App.4th 988, 994-996; People v. Baeske (1976) 58 Cal.App.3d 775, 779-781 [police report of a telephone call by a purported witness].) The hearsay evidence in the official documents could not be used for the truth of the matter asserted, namely, that a Black man shot the victim.

10

Defendant contends the statement was an excited utterance. Such a statement may be admitted if "made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid.Code, § 1240, subd. (b).) However statements made in response to questioning do not always qualify: The trial court has broad discretion to determine whether a statement is trustworthy because it was uttered in response to a stressful event. (People v. Phillips (2000) 22 Cal.4th 226, 235-236; People v. Poggi (1988) 45 Cal.3d 306, 318-319; see generally 1 Witkin, Cal. Evidence (4th ed. 2000) Hearsay, §§ 178-182, pp. 893-900.)

Here, the trial court in part stated, "[A]bsent other, if you will, competent evidence that would support who said it or the reliability of that statement, I was excluding it primarily on the basis of [Evidence Code section] 352 because I thought this would be far more prejudicial than probative with respect to what was being elicited." This shows that the trial court, in part, found the statement was not a reliable excited utterance. The caller was calm as he answered the dispatcher's questions, and in part he was responding to questions posed by an unknown person, because the peace officer could not authenticate his voice. Further, the caller never stated that he personally saw the shooting. Based on these facts, we cannot say the trial court abused its discretion in excluding the statement.

Defendant separately contends that because the evidence would tend to show third-party culpability, a different standard of admission applied, because exclusion of such evidence would deprive him of his federal constitutional right to present a defense. This is not correct.

In order to be admissible, evidence of third party culpability must be "direct or circumstantial evidence linking the third person to the actual perpetration" of the crimes for which the defendant is being prosecuted. (People v. Hall (1986) 41 Cal.3d 826, 833.) But third-party culpability evidence is subject to normal state evidentiary rules. (Id. at pp. 834-835; see People v. Frierson (1991) 53 Cal.3d 730, 746 ["' Hall did not undertake to repeal the Evidence Code. Incompetent hearsay is as inadmissible as it always was"].)

Finally, and contrary to defendant's view, if a trial court errs in the application of ordinary state evidentiary rules, the error is subject to the "miscarriage of justice" standard of prejudice. (Cal. Const., art. VI, § 13; see People v. Fudge (1994) 7 Cal.4th 1075, 1102-1103; People v. Cudjo (1993) 6 Cal.4th 585, 610-612.) The jury knew the victim had been drinking and had a motive against defendant, as a member of the Morales family. Evidence that an unknown person who may or may not have seen the shooting told an officer the shooter was a Black man would not have changed the result.FN3

FN3. Defendant is not entitled to the more favorable custody credit formula recently enacted, in part because of his personal use of a firearm and infliction of great bodily harm. (Pen.Code, § 1192.7, subd. (c)(8); 4019, subds. (b)(2) & (c)(2).)

(Respondent's Lodged Document 2, 2-11.)

In the motion to dismiss, respondent argues that petitioner has failed to

demonstrate that it is more likely than not that no reasonable juror would have convicted him had

1   the evidence regarding the 911 call been admitted.  The undersigned agrees.  First, after

2   independently reviewing the transcript, the undersigned finds that the evidence against petitioner

3   was strong.  (Respondent's lodged document 9.)  The summary of the record by the California

4   Court of Appeal above is accurate.  The undersigned also observes that no evidence was

5   presented that anyone else had a motive to shoot the victim or had threatened the victim.  As

6   noted by respondent, the 911 call was made by an unknown male.  It is unclear whether this

7   person actually witnessed the shooting.  For these reasons, no reasonable juror would have

8   acquitted petitioner based on evidence of the 911 call.

9          Petitioner also argues that counsel was ineffective for failing to investigate the

10   911 call and for failing to call as a witness the person who made the call.  Petitioner argues, in

11   essence, that this person would have been able to testify that a black person, rather than petitioner

12   (who is Hispanic) shot the victim.  Petitioner also implies that an investigation would have

13   uncovered the true shooter.  Petitioner's claim of actual innocence, implicated by his ineffective

14   assistance of counsel claim, requires further discussion.

15          As discussed above, the evidence against petitioner at trial was strong.  Admission

16   of evidence regarding the 911 tape would not have changed the outcome.  The issue the

17   undersigned must consider is whether petitioner is entitled to an evidentiary hearing addressing

18   counsel's alleged ineffectiveness for failing to investigate the 911 call and call as a witness the

19   person who made the call.

20          In order to obtain an evidentiary hearing as to his claim of actual innocence,

21   petitioner must "show what more an evidentiary hearing might reveal of material import on his

22   assertion of actual innocence."  Gandarela v. Johnson, 286 F.3d 1080, 1087 (9th Cir. 2002).  In

23   the instant case, other than the tape from the 911 call, petitioner cites no evidence in support of

24   his claim of actual innocence.  Petitioner does not, for example, identify any of the black

25   juveniles who were with him when he first went to the victim's house.  Any of these juveniles

26   were potentially the shooter under petitioner's theory.  Petitioner has not established that "an

1   evidentiary hearing would produce evidence more reliable or more probative" than the 911 call.

2   See Griffin v. Johnson, 350 F.3d 956, 966 (9th Cir. 2003). For these reasons, petitioner is not

3   entitled to an evidentiary hearing as to his actual innocence claim based on alleged ineffective

4   assistance of counsel. Petitioner has not met his burden of demonstrating actual innocence under

5   the strict standards set in Schlup as to this claim.

6   IV. Relation Back

7              In an abundance of caution, the undersigned herein considers whether the new

8   claims raised in the amended petition would be timely were the original petition found to be

9   timely.

10              A new claim in an amended petition that is filed after the expiration of the

11   one-year limitation period will be timely only if the new claim relates back to a claim in a

12   timely-filed pleading under Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that

13   the claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely

14   pleading. Mayle v. Felix, 545 U.S. 644 (2005). In Mayle, the Supreme Court held that habeas

15   claims in an amended petition do not arise out of "the same conduct, transaction or occurrence"

16   as claims in the original petition merely because the claims all challenge the same trial,

17   conviction or sentence. 545 U.S. at 655–64. Rather, under the construction of the rule approved

18   in Mayle, Rule 15(c) permits relation back of habeas claims asserted in an amended petition

19   "only when the claims added by amendment arise from the same core facts as the timely filed

20   claims, and not when the new claims depend upon events separate in 'both time and type' from

21   the originally raised episodes." 545 U.S. at 657. In this regard, the reviewing court looks to "the

22   existence of a common 'core of operative facts' uniting the original and newly asserted claims."

23   A claim that merely adds "a new legal theory tied to the same operative facts as those initially

24   alleged" will relate back and be timely. 545 U.S. at 659 & n.5.

25   ////

26   ////

13

1          In <u>Mayle</u>, the Supreme Court noted two cases where relation back was permitted:

2          For example, in <u>Mandacina v. United States</u>, 328 F.3d 995, 1000–1001 (C.A.8 2003), the original petition alleged violations of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194 (1963), while the amended petition alleged the Government's failure to disclose a particular report.  Both pleadings related to evidence obtained at the same time by the same police department. The Court of Appeals approved relation back.  And in <u>Woodward v. Williams</u>, 263 F.3d 1135, 1142 (C.A.10 2001), the appeals court upheld relation back where the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted.  See also 3 J. Moore, et al., Moore's Federal Practice § 15.19[2], p. 15–82 (3d ed.2004) (relation back ordinarily allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory").

9  <u>Mayle v. Felix</u>, 545 U.S. at 664, n.7.

10          In his new claim alleging a <u>Brady</u> violation, petitioner alleges that prior to his

11  preliminary hearing, the prosecution failed to disclose evidence of the 911 call and the Computer

12  Aided Dispatch Logs.

13          In his effective assistance of trial counsel claim, petitioner argues that trial counsel

14  was ineffective for:  1) failing to conduct any reasonable pretrial investigation in preparation to

15  cross-examine prosecution witnesses before the preliminary hearing; 2) failing to perform

16  adequately during the entire trial; 3) failing to investigate who made the 911 call; 3) failing to

17  call as a witness the person who made the 911 call; 4) failing to use an investigator to identify

18  witnesses; 5) failing to present expert identification witnesses; and 6) failing to preserve issues

19  for appeal.

20          Petitioner alleges that appellate counsel was ineffective for failing to raise the

21  <u>Brady</u> claim on appeal.

22          For the following reasons, the undersigned finds that none of the new claims

23  raised in the amended petition relate back to the claim raised in the original petition.

24          In the original petition, petitioner raised a claim alleging violation of the right to

25  present a defense.  <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986).  A court may nevertheless

26  exclude relevant, exculpatory evidence "if its probative value is substantially outweighed by" the

1   risk of undue delay, prejudice, or confusion.  See Cal. Evid.Code § 352.

2          Under California law, "evidence of third party culpability must be capable of

3   raising a reasonable doubt of the defendant's guilt," which requires "direct or circumstantial

4   evidence linking the third person to the actual perpetration of the crime," People v. Davis, 10

5   Cal.4th 463 (Cal.1995) (internal quotation marks omitted).  To be entitled to federal habeas relief

6   on the exclusion of this evidence, however, petitioner must demonstrate that the trial court's

7   decision "render[ed] the state proceedings so fundamentally unfair as to violate due process."

8   Spivey v. Rocha, 194 F.3d 971, 977–78 (9th Cir. 1999); see also Territory of Guam v. Ignacio,

9   10 F.3d 608, 615 (9th Cir. 1993) ("There is no question that the defendant has the right to

10  introduce evidence of third-party culpability.... The defendant's right to present evidence which

11  may exonerate him, however, is not absolute and may have to bow to accommodate other

12  legitimate interests in the criminal trial process." (internal quotation marks omitted) (citations

13  omitted)).

14         Petitioner's ineffective assistance of counsel claims that are unrelated to the 911

15  call do not relate back to the claim alleging that the trial court erred in excluding evidence related

16  to the 911 call as they clearly do not share a common core of operative facts.

17         Petitioner's claims challenging trial counsel's alleged failure to investigate the

18  911 call and alleged failure to call as a witness the person who made the 911 call also do not

19  relate back to the claim challenging the trial court's exclusion of evidence regarding the 911 call.

20  A claim of ineffective assistance of counsel is analyzed under the test set forth in Strickland v.

21  Washington, 466 U.S. 668 (1984), which requires a showing of deficient performance and

22  prejudice.  Deficient performance requires a showing that trial counsel's representation fell

23  below an objective standard of reasonableness as measured by prevailing norms.  Wiggins v.

24  Smith, 539 U.S. 510, 521 (2003).  To establish prejudice, petitioner must show a reasonable

25  probability that "but for counsel's unprofessional errors, the result of the proceedings would have

26  been different."  Strickland, 466 U.S. at 694.

1    Petitioner's ineffective assistance of counsel claims regarding the 911 call involve

2  consideration of  counsel's preparation, strategy and representation.  In contrast, the challenge to

3  the trial court's failure to admit evidence regarding the 911 call involves an assessment of the

4  trial court's reasoning in denying the request.

5    The fact that these claims all involve the 911 call does not meet <u>Mayle</u>'s

6  definition of the same "conduct, transaction or occurrence."  Were that not so, then any claim of

7  trial court error would "inherently contain a potential claim for ineffective assistance of counsel,

8  and vice-versa, resulting in an absurd scenario wherein one claim could always be raised at any

9  time during the pendency of the habeas proceedings on the other claim and that amendment

10  would have to be permitted under that broad interpretation of the 'relation back' requirement."

11  <u>Ireland v. Cash</u>, 2013 WL 310355 at *6 (E.D. Cal. 2013).

12    For similar reasons, petitioner's <u>Brady</u> violation claim does not relate back to his

13  claim alleging trial court error in excluding evidence of his third party defense.  There are three

14  components to a <u>Brady</u> violation.  <u>See</u> <u>Benn v. Lambert</u>, 283 F.3d 1040, 1052 (9th Cir. 2002).

15  First, the suppressed evidence must be favorable to the accused.  <u>See</u> <u>U.S. v. Bagley</u>, 473 U.S.

16  667, 676 (1985) citing <u>Brady</u>, 373 U.S. at 87.  Second, the evidence must have been suppressed

17  by the government, either willfully or inadvertently.  <u>See</u> <u>U.S. v. Agurs</u>, 427 U.S. 97, 110 (1976).

18  Third, the suppressed evidence must be material to the guilt or innocence of the defendant. <u>See</u>

19  <u>Bagley</u>, 473 U.S. at 676–78.

20    Petitioner's <u>Brady</u> claim involves consideration of the government's conduct,

21  unlike petitioner's claim challenging the trial court's exclusion of evidence regarding the 911

22  call.  While there are some similarities between these claims, they do not share a common core of

23  operative facts.

24    Petitioner's claim alleging ineffective assistance of appellate counsel for failing to

25  raise a <u>Brady</u> claim also does not relate back to the claim challenging the trial court's exclusion

26  of evidence regarding the 911 call.  Claims of ineffective assistance of appellate counsel are

1    reviewed according to the standard set out in Strickland, 466 U.S. 668 (1984).  See Miller v.

2    Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  Therefore, in analyzing the ineffective assistance

3    of appellate counsel claim, this court would consider appellate counsel's reasons for not raising

4    the Brady claim.  This court also would consider the merits of the Brady claim in considering the

5    prejudice component of Strickland and, in particular, the government's conduct.  Consideration

6    of petitioner's claim challenging the trial court's exclusion of evidence regarding the 911 call

7    does not involve consideration of these issues.

8               For the reasons discussed above, the undersigned finds that the new claims raised

9    in the amended petition do not relate back to the claim raised in the original petition.

10              Accordingly, IT IS HEREBY ORDERED that respondent's motion to file an

11   untimely reply (ECF No. 28) is granted; and

12              IT IS HEREBY RECOMMENDED that respondent's motion to dismiss (ECF No.

13   19) be granted.

14              These findings and recommendations are submitted to the United States District

15   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

16   one days after being served with these findings and recommendations, any party may file written

17   objections with the court and serve a copy on all parties.  Such a document should be captioned

18   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

19   objections, he shall also address whether a certificate of appealability should issue and, if so, why

20   and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

21   the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

22   § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

23   service of the objections.  The parties are advised that failure to file objections within the

24   ////

25   ////

26   ////

1   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

2   F.2d 1153 (9th Cir. 1991).

3   DATED:  June 17, 2013

4

5                                                KENDALL J. NEWMAN

6                                                UNITED STATES MAGISTRATE JUDGE

7   mor544.157

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

18