UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR MORALES, | No. 2: 12-cv-0544 TLN KJN P |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| ANTHONY HEDGPETH, | |
| Respondent. | |

Introduction

Petitioner is a state prisoner, proceeding through counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2009 conviction for attempted murder and assault with a firearm, personal use and discharge of a firearm, and infliction of great bodily injury. Petitioner is serving a sentence of 32 years to life.

This action is proceeding on the amended petition filed August 22, 2012, as to the claim that the trial court erred by excluding evidence of third party culpability.[1] (ECF No. 17.) After carefully reviewing the record, the undersigned recommends that petitioner's claim alleging evidentiary error be denied.

////

---

[1] As discussed herein, the other claims raised in the amended petition have been dismissed.

1

Procedural Background

The amended petition raised four claims:  1) the trial court erred by excluding evidence of third party culpability; 2) Brady error; 3) ineffective assistance of trial counsel; and 4) ineffective assistance of appellate counsel.  (ECF No. 17.)

On November 17, 2013, respondent filed a motion to dismiss on grounds that this action was barred by the statute of limitations.  (ECF No. 17.)  On June 17, 2013, the undersigned recommended that respondent's motion be granted.  (ECF No. 31.)

On September 17, 2013, the Honorable Lawrence K. Karlton issued an order adopting the June 17, 2013 findings and recommendations in part.  (ECF No. 34.)  Judge Karlton found that claim one was not barred by the statute of limitations and denied respondent's motion to dismiss this claim.  (Id.)  As for the remaining claims, Judge Karlton granted the motion to dismiss without prejudice to petitioner's right to seek reconsideration as set forth in the order.  (Id.)  In particular, Judge Karlton referred this action to the Office of the Federal Defender for the purpose of determining whether evidence existed to support a claim of actual innocence which would overcome the statute of limitations bar.  (Id.)

On June 6, 2014, through counsel, petitioner filed a motion for an evidentiary hearing in support of his claim for actual innocence and a motion for witness immunity.  (ECF Nos. 45, 46.)  On December 17, 2014, the undersigned recommended that petitioner's motions for an evidentiary hearing and witness immunity be denied.  (ECF No. 69.)  On May 1, 2015, the Honorable Troy L. Nunley adopted the findings and recommendations.  (ECF No. 75.)

On August 6, 2015, respondent filed an answer to petitioner's remaining claim alleging that the trial court erred in excluding evidence of third party culpability.  (ECF No. 80.)  On November 10, 2015, respondent filed a reply to the answer and exhibits in support of the reply.  (ECF Nos. 86, 87.)

Standards for a Writ of Habeas Corpus

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), an application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A

federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

////

1    The court looks to the last reasoned state court decision as the basis for the state court
2 judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision,
3 "and the state court has denied relief, it may be presumed that the state court adjudicated the
4 claim on the merits in the absence of any indication or state-law procedural principles to the
5 contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing
6 that "there is reason to think some other explanation for the state court's decision is more likely."
7 Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

8    "When a state court rejects a federal claim without expressly addressing that claim, a
9 federal habeas court must presume that the federal claim was adjudicated on the merits – but that
10 presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct.
11 1088, 1096 (Feb. 20, 2013). "When the evidence leads very clearly to the conclusion that a
12 federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de
13 novo review of the claim. Id., at 1097.

14    Where the state court reaches a decision on the merits but provides no reasoning to
15 support its conclusion, the federal court conducts an independent review of the record.
16 "Independent review of the record is not de novo review of the constitutional issue, but rather, the
17 only method by which we can determine whether a silent state court decision is objectively
18 unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned
19 decision is available, the habeas petitioner has the burden of "showing there was no reasonable
20 basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must
21 determine what arguments or theories supported or, . . . could have supported, the state court's
22 decision; and then it must ask whether it is possible fairminded jurists could disagree that those
23 arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at
24 786.

25 ////
26 ////
27 ////
28 ////

4

Factual Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the undersigned finds this summary to be accurate and adopts it herein:

> BACKGROUND
>
> The People's case was straightforward: The victim had had a long-running feud with the Morales family, and eventually defendant, a younger son in that family, shot the victim. The defense theory was that the victim was drunk and could not identify the person who shot him, but used the occasion of being shot to blame defendant, as part of that family feud. The only evidence that defendant was the shooter came from the victim's statements and testimony, although the victim's daughter made a statement corroborating defendant's presence on the occasion of the shooting.
>
> The victim testified he knew defendant, in part because defendant's older brother Steven had had an affair with the victim's ex-wife, which caused the victim and his ex-wife to divorce. This affair had made the victim angry, and after the victim made criminal threats against his wife, which he claimed were unrelated to the affair, she obtained a restraining order, and their children went to live with the Morales family for several months.
>
> After the victim and his ex-wife reconciled for a time, Steven Morales ran them off the road with his car, with the aid of his brother, Johnnie Morales, as a result of which Steven Morales was sent to prison. The victim's stepdaughter had had children with Hector Morales, another brother of defendant, and the victim disapproved of this relationship. The victim testified that about four or five years prior, he got into a fistfight with several members of the Morales family, but not with defendant, and that Steven Morales "shot at me that day twice." The victim testified he was "still feuding to this day" with the Morales family.
>
> On the evening of January 25, 2006, the victim was on his porch, drinking with friends, when defendant, a "Hispanic," arrived with a group of about six or seven Black male teenagers. After words were exchanged and the victim threatened to sic his dog on them, the group left. However, defendant threatened to come back in 20 minutes and shoot the victim. The victim called his ex-wife and told her defendant had threatened to shoot him and said, "If anything happens to me, make sure my family gets justice." Later, defendant returned and called out to the victim. The victim saw defendant had his hands through the fence, holding something. The victim turned away, and was shot in the back.
>
> The victim testified that in the exchange of words he had with defendant prior to the shooting, he referred to defendant's brother Steven as defendant's "sister." He also testified that when he first saw the group of teenagers, with one Hispanic standing alone, he

5

called out that he knew "that's not Morales," but he did not mean he knew it was not defendant, he meant if that person was a Morales family member, there would "be some problems right there[.]"

The victim told the first officer on the scene that defendant was the shooter, and the next day the victim identified defendant from a photographic lineup. The victim described defendant to the officer as a "male Hispanic, 14 to 15 years old, 120 pounds, wearing all black clothing." The victim also gave this officer a fuller statement at the hospital, identifying defendant as the shooter and stating that defendant, in the company of about five male Black juveniles, had threatened to shoot him about 20 minutes earlier.

The victim testified he had had about two 40-ounce malt liquors that evening, starting about 7:00 p.m. and ending when he was shot about two hours later, but he later conceded, "It's been so long. Might have been the fourth one, might have been the fifth one. I don't know. I wasn't counting them." A doctor noted in the hospital records that the victim was intoxicated.

The victim had seen one of the Black "kids" before: That youth had been bothering Robert, one of the victim's drinking companions, and was a "troublemaker in the neighborhood." On Thanksgiving 2006, after the shooting, the victim was visiting Robert, when defendant's brother Johnnie and his family pelted the victim's car with beer bottles and "[t]hey was kicking the doors, trying to pull us out, scratching, screaming, hollering, all kind of stuff."

The victim's daughter testified she saw her father arguing with a group of teenagers consisting of Blacks and one "Mexican." She heard one teenager say, "[W]e're coming back with a nine millimeter." She had not identified any of the teenagers as defendant, whom she knew, but her father told her defendant was the one who threatened him. In part, her 911 call transcript reads "my dad was arguing with some black guys. And they said that they were gonna bring a .9mm and come and shoot him." She testified she said this because most members of the group were Black. A peace officer testified that on the night of the shooting, the victim's daughter identified defendant as the lone Hispanic in the group.

Defendant did not testify at trial.

People v. Morales, 2010 WL 3245400 at *1-2 (2010).

State Court Opinion Addressing Claim

The California Court of Appeal was the last state court to issue a reasoned decision addressing the at-issue claim. The California Court of Appeal denied this claim for the reasons stated herein:

////

6

DISCUSSION

During the victim's direct testimony, but outside the presence of the jury, the defense expressed a wish to introduce evidence of a 911 call that purportedly indicated the shooter was Black, to show that the responding peace officers "did nothing to try and follow-up" on that information. Apparently, defense counsel had represented in her opening statement that a witness to the shooting identified the shooter as a Black male, and the prosecutor had objected on hearsay grounds. Later in the trial, the People objected to any evidence that an unknown witness had identified a Black shooter. Specifically, the prosecutor interposed a hearsay objection to the following question defense counsel asked a peace officer: "Now, the information that was provided, did that include a person giving you a description of a black male person as being responsible for the shooting?" Outside the presence of the jury, defense counsel represented that the 911 caller gave the officer a "detailed description about where the person shot from, the person was a male black, 20 to 21, and he shot from the fence line."

The recording and transcript of the 911 call indicate the caller was talking to someone at the scene-apparently a peace officer-at the same time as he was relaying information to the dispatcher. The caller is calm and unhurried in his responses, and states the shooter was a Black male, aged 21 to 22, and that he "shot from the fence line." The caller never states that he personally saw the shooting. After the recording was played in court, and the officer could not authenticate his purported voice in the recording, the trial court sustained the prosecutor's objection. [Footnote 1.]

> [Footnote 1: Appellate counsel infers the 911 caller was one of the victim's friends. But defense counsel did not establish this purported fact in the trial court, nor did she call that friend as a witness.

Later, the parties discussed a dispatch or "CAD" log entry, that translates as: "Per witness, suspect[s], five to six ... male blacks ..., possible adults on foot, last seen eastbound from scene." [Footnote 2.] The prosecutor interposed a successful hearsay objection. The trial court also stated, "I've indicated to you both, absent other, if you will, competent evidence that would support who said it or the reliability of that statement, I was excluding it primarily on the basis of 352 because I thought this would be far more prejudicial than probative with respect to what was being elicited."

> [Footnote 2: The original "CAD" text reads: "PER WITN. SUSP-5-6 MB POSS ADULTS, ON FOOT LS EB FROM SCENE[.]"

The following Monday, before testimony resumed, defense counsel moved to enter the 911 call as a "business record" and use it to show that "law enforcement, for all the jury has heard, has done nothing to further investigate this crime beyond hearing the name of [defendant]." She wanted to introduce the "CAD" entry on the same grounds. She also asserted the caller's statement was admissible as

7

an excited utterance. The prosecution had filed a written opposition to the use of either item of evidence for the truth of the matter asserted, but did not dispute that the two documents were certified records. The trial court excluded both items of evidence.

On appeal, defendant contends the 911 call and the CAD log were admissible "under the business records and excited utterance exceptions to the hearsay rule." He separately contends that because they tended to inculpate a third party, they were admissible. We disagree.

As for the claim that the evidence was admissible to show a Black man shot the victim, it was inadmissible hearsay. A similar claim was rejected in a civil tort case, where the plaintiff attempted to rely on the content of 911 calls to show prior criminal incidents at a business:

The analytical flaw in plaintiffs' contention that the trial court erred in disallowing the records is its failure to recognize and address the fact that the records were multiple hearsay. That is, the records were offered to prove two points. The first is that the 911 calls were placed to the LAPD. The second is that a particular action or crime was taking place at the restaurant as reflected in the statements made to the 911 operator by the individual(s) who placed the phone calls. When multiple hearsay is offered, an exception for each level of hearsay must be found in order for the evidence to be admissible. (Evid.Code, § 1201.)

In this case, [the LAPD custodian of records'] testimony that the public employees who took and recorded the calls were obligated to record the information in an accurate manner laid the foundation for the admission of the records as official records to establish that the 911 calls were placed to the LAPD. However, that testimony did not and could not lay a sufficient foundation to permit the records to be offered for the truth of the matter asserted in the calls by the individuals who telephoned the LAPD because those individuals were not under a duty to accurately report information. [Citation.]" (Alvarez v. Jacmar Pacific Pizza Corp. (2002) 100 Cal.App.4th 1190, 1204-1205, original italics, fn. omitted.)

The same rule applies in criminal cases. (See People v. Ayers (2005) 125 Cal.App.4th 988, 994-996; People v. Baeske (1976) 58 Cal.App.3d 775, 779-781 [police report of a telephone call by a purported witness].) The hearsay evidence in the official documents could not be used for the truth of the matter asserted, namely, that a Black man shot the victim.

Defendant contends the statement was an excited utterance. Such a statement may be admitted if "made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid.Code, § 1240, subd. (b).) However statements made in response to questioning do not always qualify: The trial court has broad discretion to determine whether a statement is trustworthy because it was uttered in response to a stressful event. (People v. Phillips (2000) 22 Cal.4th 226, 235-236; People v. Poggi

8

> (1988) 45 Cal.3d 306, 318-319; see generally 1 Witkin, Cal. Evidence (4th ed. 2000) Hearsay, §§ 178-182, pp. 893-900.)
>
> Here, the trial court in part stated, "[A]bsent other, if you will, competent evidence that would support who said it or the reliability of that statement, I was excluding it primarily on the basis of [Evidence Code section] 352 because I thought this would be far more prejudicial than probative with respect to what was being elicited." This shows that the trial court, in part, found the statement was not a reliable excited utterance. The caller was calm as he answered the dispatcher's questions, and in part he was responding to questions posed by an unknown person, because the peace officer could not authenticate his voice. Further, the caller never stated that he personally saw the shooting. Based on these facts, we cannot say the trial court abused its discretion in excluding the statement.
>
> Defendant separately contends that because the evidence would tend to show third-party culpability, a different standard of admission applied, because exclusion of such evidence would deprive him of his federal constitutional right to present a defense. This is not correct.
>
> In order to be admissible, evidence of third party culpability must be "direct or circumstantial evidence linking the third person to the actual perpetration" of the crimes for which the defendant is being prosecuted. (People v. Hall (1986) 41 Cal.3d 826, 833.) But third-party culpability evidence is subject to normal state evidentiary rules. (Id. at pp. 834-835; see People v. Frierson (1991) 53 Cal.3d 730, 746 ["'Hall did not undertake to repeal the Evidence Code. Incompetent hearsay is as inadmissible as it always was'"].)
>
> Finally, and contrary to defendant's view, if a trial court errs in the application of ordinary state evidentiary rules, the error is subject to the "miscarriage of justice" standard of prejudice. (Cal. Const., art. VI, § 13; see People v. Fudge (1994) 7 Cal.4th 1075, 1102-1103; People v. Cudjo (1993) 6 Cal.4th 585, 610-612.) The jury knew the victim had been drinking and had a motive against defendant, as a member of the Morales family. Evidence that an unknown person who may or may not have seen the shooting told an officer the shooter was a Black man would not have changed the result. [Footnote omitted.]

Id. at 2-5.

Discussion

In the amended petition, petitioner argues that the exclusion of the 911 call and CAD log violated his right to present a defense. (ECF No. 17 at 47.) Petitioner argues that the trial court erred in finding that the 911 call and CAD logs were inadmissible hearsay. (Id. at 40.) Petitioner argues that the 911 call and CAD log were relevant and admissible under a traditional "third party liability" theory. (Id. at 43.)

Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense; this right is "a fundamental element of due process of law." Washington v. Texas, 388 U.S. 14, 19 (1967). See also Crane v. Kentucky, 476 U.S. 683, 687, 690 (1986); California v. Trombetta, 467 U.S. 479, 485 (1984). However, the constitutional right to present a defense is not absolute. Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003). "Even relevant and reliable evidence can be excluded when the state interest is strong." Perry v. Rushen, 713 F.2d 1447, 1450 (9th Cir. 1983). The Supreme Court has rarely held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence. Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013).

State law rules excluding evidence from criminal trials do not abridge a criminal defendant's right to present a defense unless they are "arbitrary" or "disproportionate to the purposes they were designed to serve" and "infringe[s] upon a weighty interest of the accused." United States v. Scheffer, 523 U.S. 303, 308 (1998). See also Crane, 476 U.S. at 689-91 (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"). Further, a criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (quoting Taylor v. Illinois, 484 U.S. 400, 410 (1988)). In general, it has taken "unusually compelling circumstances ... to outweigh the strong state interest in administration of its trials." Perry, 713 F.2d at 1452. "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

Finally, where exclusion of evidence violates a petitioner's right to present a defense, habeas relief is appropriate only if the constitutional violation resulted in error that "had [a] substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). This standard applies whether or not the state appellate court recognized the error. Fry v. Pliler, 551 U.S. 112, 117 (2007).

1    The United States Supreme Court has not "squarely addressed" whether a state court's exercise of discretion to exclude testimony violates a criminal defendant's right to present relevant evidence. Moses v. Payne, 555 F.3d 742, 758-59 (9th Cir. 2009). Nor has it clearly established a "controlling legal standard" for evaluating discretionary decisions to exclude the type of evidence at issue here. Id. at 758. Accordingly, the decision of the California Court of Appeal that the trial court's discretionary evidentiary ruling did not violate the federal constitution is not contrary to or an unreasonable application of clearly established United States Supreme Court precedent and may not be set aside. Id. See also Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam) (relief is "unauthorized" under Section 2254(d)(1) when the Supreme Court's decisions "given no clear answer to the question presented, let alone one in [the petitioner's] favor," because the state court cannot be said to have unreasonably applied clearly established Federal law); Brown v. Horell, 644 F.3d 969, 983 (9th Cir. 2011) ("Between the issuance of Moses and the present, the Supreme Court has not decided any case either 'squarely address[ing]' the discretionary exclusion of evidence and the right to present a complete defense or 'establish[ing] a controlling legal standard' for evaluating such exclusions."), cert. denied, 132 S. Ct. 593 (2011).

In any event, California Evidence Code § 1240, which codifies the excited utterance exception to the hearsay rule, is not "arbitrary" or "disproportionate" to the purpose it was designed to serve. See Scheffer, 523 U.S. at 308. Rather, California Evidence Code § 1240 is the type of established rule of evidence which the Supreme Court has recognized does not impair a defendant's right to present a defense. The Supreme Court has held that hearsay statements characterized as "excited utterances" or "spontaneous declarations" are "firmly rooted" exceptions to hearsay. See Idaho v. Wright, 497 U.S. 805, 820 (1990); White v. Illinois, 502 U.S. 346, 355-56 (1992).

Moreover, the California Court of Appeal's decision that the 911 call and CAD log were properly excluded under the excited utterance exception was not unreasonable. The California

////

////

11

1   Court of Appeal found that the 911 tape, and related log, do not demonstrate that the caller

2   witnessed the shooting or that he was under any stress of excitement.[2] The undersigned has

3   listened to the tape of the at-issue 911 call, submitted by petitioner, and agrees with the California

4   Court of Appeal's findings regarding the caller's demeanor and perceptions.

5        In the reply to the answer, petitioner argues the prosecutor misrepresented to the court that

6   the identity of the 911 caller was unknown. Petitioner argues that the trial prosecutor knew that

---

[2] The 911 operator asked the caller if he knew who shot the victim:

Q: Do you know who did this to him?
A: Uh –somebody down the street.
Q: Okay. Nobody ---
A: The guy got shot right there. People went down that way.
Q: Who's the guy that shot him?
A: It's somebody down this way, black. I –I –(Unintelligible) did you see that? He shot (Unintelligible).
Q: Male black? Male white?
A: Male – male black. (Unintelligible.)
Q: Okay. Male black. (Untelligible.)
A: Uh –(Unintelligible) –uh ( Unintelligible) –dark clothes.
Q: Male black. Approximately how old?
A: I'd say 21, 22.
(ECF No. 87-2 at 12.)

---

17   The discussion from the 911 tape quoted above does not demonstrate that the caller witnessed the
    shooting. The 911 operator did not directly ask the caller if he saw the shooting. Petitioner has
18   also provided a copy of a police report containing a statement by Jerome Day, later identified as
    the 911 caller, after the shooting. (ECF No. 87-6 at 1.) In this interview, Day indicated that he
19   did not see the shooting. Day told the police:

20   
> I was standing outside with [the victim], having some beers, when a
21   > shot from a gun went off. I only saw it from the corner of my eye,
> and saw that it was a dark complected and dark clothed man. The
22   > man ran eastbound on Yreka from Woodbine. I didn't get a good
> look at him and wouldn't be able to identify him if I saw him again.
23   
> The reason I was out drinking in [the victim's] yard was because he
24   > had had a conflict with someone earlier in the day and they had told
> [the victim] that they would come back with guns.
25   
> [The victim] just said that he had problems with some Mexican kids
26   > and didn't tell me the details.

27        Even if the trial and state appellate courts erred in finding that 911 caller Day did not see
    the shooting or shooter, the state courts' finding that Day was not under the stress of excitement is
28   clear from the 911 tape.

the caller was petitioner's neighbor, Jerome Day. Petitioner also argues that his counsel was ineffective for failing to provide the trial court with additional information regarding the identity of the 911 caller. Petitioner suggests that the trial court's ruling regarding admission of the 911 call and CAD log would have been different if it had all the relevant information.

This court previously found that petitioner's claim alleging ineffective assistance of counsel based on counsel's alleged failure to investigate the 911 tape was barred by the statute of limitations. (ECF No. 34.) Petitioner may not raise this untimely claim by way of his timely claim challenging the trial court's exclusion of the 911 call and CAD log. In addition, petitioner's claim that the prosecutor intentionally withheld evidence regarding the 911 caller's identity is most likely a separate and unexhausted prosecutorial misconduct claim.[3] Accordingly, the undersigned will not consider petitioner's allegations of prosecutorial misconduct and ineffective assistance of counsel in evaluating the instant claim of trial court error.

In any event, petitioner's argument that the trial court would have ruled differently had it been aware of the identity of the 911 caller is really a further extension of the actual innocence argument raised by petitioner in his attempt to overcome the statute of limitations bar as to his untimely claims. On December 17, 2014, the undersigned recommended that petitioner's motion for an evidentiary hearing in support of his actual innocence claim be denied, thus rejecting the merits of petitioner's actual innocence claim. (ECF No. 69.) The Honorable Troy L. Nunley adopted these findings and recommendations. (ECF No. 75.) In the December 17, 2014 findings and recommendations, the undersigned considered the declaration of Jerome Day, submitted by petitioner. (ECF No. 69 at 9-10.) The undersigned found that the Day declaration was not persuasive evidence of petitioner's actual innocence. (Id. at 21.)

Under the circumstances of this case, petitioner has not met his "heavy" burden to show a due process violation resulting from the trial court's decision to exclude the 911 tape and CAD log.

---

[3] Petitioner's Brady claim, which the court found barred by the statute of limitations, argued that the prosecutor withheld the 911 call and CAD log. This claim appears separate from the prosecutorial misconduct claim asserted in the reply, i.e., that the prosecutor withheld evidence regarding the identity of the 911 caller.

13

Finally, the undersigned cannot find that the exclusion of the 911 tape and CAD log caused a substantial and injurious influence on the jury's verdict. As noted by the California Court of Appeal, the jury knew the victim had been drinking and had a motive against petitioner. The undersigned agrees with the California Court of Appeal that evidence that an unknown person who may or may not have seen the shooting told an officer the shooter was a Black man would not have changed the result.

In the reply to the answer, petitioner also argues that the 911 call was admissible pursuant to Davis v. Washington, 547 U.S. 813 (2006). The undersigned addresses this argument herein.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. The ultimate goal of the Confrontation Clause "is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." Crawford v. Washington, 541 U.S. 36, 61 (2004).

The Confrontation Clause applies to all "testimonial" statements. See Crawford, 541 U.S. at 50-51. "Testimony ... is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. at 51 (internal quotation marks and brackets omitted); see id. at 51 ("[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not"); id. at 68 ("[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations").

In Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court distinguished testimonial and nontestimonial statements to police. "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 822; see, e.g., id. at 826-28 (victim's

14

frantic statements to a 911 operator naming her assailant who had just hurt her were not testimonial); id. at 829-30 (victim's statements to officer telling him what had happened were testimonial, as there was no emergency in progress and were made after police officer had separated victim and assailant); Crawford, 541 U.S. at 39-40, 68 (statements were testimonial where made by witness at police station to a series of questions posed by an officer who had given Miranda warnings to witness and was taping and making notes of the answers).  Non-testimonial statements, while not subject to Confrontation Clause, are subject to traditional limitations upon hearsay evidence.  Davis, 547 U.S. at 821.

Petitioner argues the 911 tape and CAD log were admissible as "non-testimonial" hearsay, as the statements were made as part of an ongoing police emergency.  This argument is without merit because, as discussed above, Day did not make his statements to the 911 operator during an ongoing emergency.  At the time Day made his statements, the threat of violence had ended and his statements were relevant to an investigation.  Assuming Day's statements to the 911 operator were non-testimonial, they would still be subject to traditional hearsay limitations, including the excited utterance doctrine.  Davis, 547 U.S. at 821.

For the reasons discussed above, the California Court of Appeal's denial of petitioner's claim challenging the trial court's exclusion of the 911 tape and CAD log was not an unreasonable application of clearly established Supreme Court authority.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's claim alleging evidentiary error be denied;

2. The Clerk of the Court be directed to enter judgment.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 30, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Mor544.157(2)